IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CV-66-FL

| | |
|---|---|
| L.C., by and through his mother, GRACE DUNBAR, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CHARTER SCHOOLS USA AT CARY, ) <br> LLC, and TRIANGLE CHARTER ) <br> EDUCATION ASSOCIATION, INC., ) <br> ) <br> Defendants. ) | ORDER |

This matter is before the court upon defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 12). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motion is granted.

## STATEMENT OF THE CASE

Plaintiff began this educational discrimination suit February 5, 2024, and filed an amended complaint as of right February 19, 2024.[1] Plaintiff asserts claims 1) under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI"); 2) for negligent supervision under North Carolina law; and 3) for intentional infliction of emotional distress under North Carolina law ("IIED"). Plaintiff seeks compensatory and punitive damages, plus costs and fees. Defendants filed the instant motion April 11, 2024, seeking dismissal of all claims for failure to state a claim upon which relief can be granted.

---

[1] All references and citations in this order to the "complaint" are to this operative version of the complaint at docket entry (DE) 5.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Plaintiff L.C., whose mother is Grace Dunbar ("Dunbar"), is an African-American student who resides in Cary, North Carolina, and used to attend Cardinal Charter Academy.[2] (Compl. ¶¶ 1, 3). Cardinal Charter Academy is associated with defendants Charter Schools USA at Cary, LLC, and Triangle Charter Educational Association, Inc., a "North Carolina non-profit entity organized for educational purposes." (See id. ¶¶ 4–5).

L.C. attended Cardinal Charter Academy for nearly eight years. (Id. ¶ 11). During his third grade year, he was forced to sit outside in a hallway, without instruction, for more than half of the year and because of Cardinal Charter Academy's failure to provide L.C. with proper instruction, L.C. had to repeat the third grade. (Id. ¶¶ 14–15). Cardinal Charter Academy allegedly falsely accused L.C. of bringing a lighter bearing a stenciled illustration of a nude woman to school. (Id. ¶ 16). Cardinal Charter Academy falsely lodged a child protective services complaint that L.C. was being neglected at home. (Id. ¶ 17).

On December 16, 2021, defendants claimed three students reported that L.C. made threats against the school, and notified the Cary police department. (Id. ¶ 18). During interviews with the students, Cardinal Charter Academy learned that L.C. was "subjected to extreme bullying, teasing, and harassment[,]" but did nothing to investigate or protect L.C. (Id. ¶ 19). Cardinal Charter Academy detained L.C. and attempted to intimidate him into confessing, but L.C.

---

[2] In deference to plaintiff's pleading at this stage, this order's caption repeats the word "plaintiffs" in the plural. However, Dunbar has sued on behalf of L.C., a minor. There is, therefore, only one plaintiff, on whose behalf Dunbar is acting. Fed. R. Civ. P. 17(c); see, e.g., Jonathan R. v. Justice, 688 F. Supp. 3d 355, 357–58 (S.D.W. Va. 2023). The remainder of this order accordingly employs "plaintiff" in the singular. Dunbar represents in the complaint that she moved to proceed under a pseudonym, but no such motion appears on this court's docket. (See Compl. ¶ 2).

continued to deny making any threats against the school. (Id. ¶ 20). Cardinal Charter Academy nonetheless suspended L.C. (Id. ¶¶ 21–24).

Plaintiff alleges that Cardinal Charter Academy's mistreatment of L.C. drove him into alcohol consumption and abuse, for which L.C. had to enroll in a rehabilitation program in Miami. (Id. ¶¶ 27–30).

## COURT'S DISCUSSION

A.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.   Analysis

Defendants argue that dismissal is warranted on several grounds because plaintiff fails to adequately plead any claims. The court agrees.

1.   Attempted Amendment of Complaint Through Briefing

At the outset the court must address plaintiff's attempted amendment through plaintiff's brief submitted in opposition to defendants' motion.

It is "well-established that parties cannot amend their complaints through briefing or oral advocacy." S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). Accordingly, a plaintiff cannot "cure pleading deficiencies . . . with later-filed supporting documentation," such as affidavits. United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 459 n.8 (4th Cir. 2013).

Plaintiff attempts to do here exactly what these cases forbid. In plaintiff's brief in opposition, plaintiff asserts "supplemental factual allegations" and submits 26 pages of additional documents, including an affidavit in support. (Pl's Br. (DE 14) 2–7). These items were not explicitly incorporated into the complaint or attached to it as exhibits, and so cannot be considered as part of the complaint. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

Accordingly, the court declines to consider plaintiff's exhibits or the briefed "supplemental factual allegations" drawn from them, for purposes of the instant motion. And, even if the court considered these, as discussed below, its conclusions would not be disturbed.

    2.    Title VI

Defendants contend that plaintiff's complaint does not properly plead either Title VI theory plausibly advanced by the complaint, for failure to allege any connection between race and any of defendants' actions. The court agrees.

        a.    Deliberate Indifference to Harassment

The first theory raised in the complaint and plaintiff's briefing is deliberate indifference to student-on-student harassment. (See Pl's Br. 7–10).

This theory of liability is well-established in jurisprudence applying Title IX, which prohibits sex discrimination in education. See 20 U.S.C. § 1681 et seq.; Davis ex rel. LaShonda

4

D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999) (recognizing theory under Title IX); Feminist Majority Found. v. Hurley, 911 F.3d 674, 686 (4th Cir. 2018) (applying Davis). The United States Court of Appeals for the Fourth Circuit has not squarely ruled whether this framework applies in the same way under Title VI, which prohibits racial discrimination in programs receiving federal funding, including education, but other courts generally accept that it does. 42 U.S.C. § 2000d; see, e.g., Fennell v. Marion Indep. Sch. Dist., 804 F.3d 398, 408 (5th Cir. 2015); Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 271 (3d Cir. 2014); Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 664–65 (2d Cir. 2012); Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty., Okla., 334 F.3d 928, 934 (10th Cir. 2003). Given this consensus of persuasive authority and the parties' agreement that Davis is the proper test, the court proceeds under that framework. (See Defs' Br. (DE 13) 5; Pl's Br. 8).

Under Davis as applied to Title VI, a plaintiff must demonstrate four elements to support a deliberate indifference to harassment claim: 1) plaintiff was a student at an institution receiving federal funds; 2) plaintiff suffered racial harassment so severe, pervasive, and objectively offensive as to deprive plaintiff of equal access to educational opportunities or benefits; 3) the school, through an official with authority to address and correct the alleged harassment, had actual notice or knowledge of the alleged harassment; and 4) the school acted with deliberate indifference to the alleged harassment. See Doe v. Fairfax Cnty. Sch. Bd., 1 F.4th 257, 263–64 (4th Cir. 2021) (setting out elements under Title IX); I.M. v. Granville Cnty. Schs., No. 5:22-cv-7-FL, 2022 WL 3441835, at *6–7 (E.D.N.C. Aug. 16, 2022) (quoting Doe and posing same elements for Title VI claim).

Defendants advance several arguments under this framework, among them that plaintiff draws no connection at all between race and the alleged harassment here. The court agrees and so does not reach defendants' other arguments.

5

Plaintiff makes two categories of factual allegations on this point. Neither is sufficient. First, plaintiff asserts in conclusory manner that L.C. was subject to unspecified racial bias. (See Compl. ¶¶ 13, 26, 38, 41). But plaintiff provides no factual support for these statements. Second, plaintiff alleges in similarly summary manner that L.C. was subjected to harassment, bullying, and "extreme teasing," but these statements draw no connection whatsoever between any of the alleged acts and race. (See id. ¶¶ 13–28). The Davis framework requires that harassment be, as relevant here, racial in nature. See, e.g., Fennell, 804 F.3d at 410–11; I.M., 2022 WL 3441835, at *7–8.

Plaintiff claims that defendants 1) made L.C. sit in a hallway; 2) falsely accused him of bringing a lighter to school; 3) made a false child protective services report; and 4) wrongfully punished L.C. for making allegedly unsubstantiated threats against the school. (See Compl. ¶¶ 13–28). None of these allegations is linked in any way to race. Accordingly, they cannot support a claim under the Davis framework, and plaintiff's Davis claim fails. See Jennings v. Univ. of N.C., 482 F.3d 686, 696 (4th Cir. 2007) (en banc) (discussing "sex-based" harassment in Title IX Davis action); I.M., 2022 WL 3441835, at *7–8 (holding that clearly racially based harassment, including the use of racial slurs, could support Davis claim); cf. Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 589 U.S. 327, 340 (2020) (holding that a § 1981 plaintiff must show that race was a but-for cause of the loss of a legally protected right).

Even if the court considered plaintiff's supplemental factual submissions, this claim would not survive. None of these improperly submitted allegations connects any conduct by any actor to race, except for Dunbar's statement in her affidavit that L.C. was bullied "mostly concerning our African heritage." (Suppl. Docs. (DE 14-1) 1). This bare allegation is substantively indistinguishable from the conclusory statement that L.C. was subjected to unspecified racial bias noted above. This claim would fail even if the court considered plaintiff's additional submissions.

b. Discriminatory Discipline

Plaintiff's response in opposition does not address or defend a theory of discriminatory discipline against which defendants argue in furtherance of their motion. This constitutes an abandonment of such theory. Nonetheless, the court will address it briefly.

A discriminatory discipline claim under Title IX requires a causal link between the student's sex and the challenged disciplinary proceeding. See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 236 (4th Cir. 2021). Applying this principle to a race-based claim here, plaintiff fails to make any link between L.C.'s race and any of the disciplinary proceedings which plaintiff challenges except a single conclusory statement that one disciplinary action involved "racial bias." (See Compl. ¶¶ 14, 16, 18–26). This claim fails for reasons similar to plaintiff's Davis claim, including how and why plaintiff's additional submissions would not affect this conclusion if considered.

In sum, plaintiff's federal claim for violation of Title VI must be dismissed for failure to state a claim upon which relief can be granted.

3. Negligent Supervision

Defendants contend that plaintiff's claim for negligent supervision must be dismissed for several reasons. The court agrees with respect to at least two of these grounds.

A negligent supervision claim under North Carolina has four elements: 1) a specific negligent act on which the action is founded; 2) incompetency, by inherent unfitness or previous specific acts of negligence from which incompetence may be inferred; 3) either actual notice to the employer of such, or constructive notice by showing that the employer could have known the facts through ordinary care; and 4) that the injury resulted from the incompetency proved. Medlin v. Bass, 327 N.C. 587, 591 (1990).

The first element requires that an employee of the defendant have committed a tort against the plaintiff. Pleasants v. Barnes, 19 S.E.2d 627, 629 (1942); Smith v. Privette, 128 N.C. App. 490, 494–95 (1998); Graham v. Hardee's Food Sys., Inc., 121 N.C. App. 382, 385 (1996).

Plaintiff's claim falters at this first step. Plaintiff asserts that unidentified employees of defendants made him sit in a hallway without supervision, and wrongfully disciplined him. These claims do not establish any torts under North Carolina law. As defendants note, these allegations appear geared mainly towards plaintiff's Title VI harassment claims, but harassment is not an actionable tort under North Carolina law. See McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003).

Additionally and in the alternative, plaintiff fails to identify any inherent unfitness or previous improper acts by any identified employees, as required under the second element. See Bass, 327 N.C. at 591.

Plaintiff attempts to salvage this claim by pointing to the School Violence Prevention Act, N.C. Gen. Stat § 115C-407.15 (the "SVPA"). (Pl's Br. 11–12). But North Carolina law will not read a private right of action into a statute when none appears in the text. See, e.g., Lea v. Grier, 156 N.C. App. 503, 508 (2003). And no private right of action appears in the SVPA. See N.C. Gen. Stat. § 115C-407.15. Plaintiff therefore cannot base a claim on a violation of the SVPA. See Benjamin v. Sparks, 173 F. Supp. 3d 272, 291 (E.D.N.C. 2016), aff'd, 986 F.3d 332 (4th Cir. 2021). Even if a violation of the SVPA constituted a privately actionable tort, the complaint would still suffer from the second infirmity identified above: it identifies no employees and establishes no inherent unfitness or previous improper acts under the tort's second element. Plaintiff's additional submissions would not alter this conclusion, because they fail to identify any actionable tort under North Carolina law, or any inherent unfitness or prior improper acts by any employees.

### 4. Intentional Infliction of Emotional Distress

Defendants finally argue that plaintiff does not adequately plead outrageous conduct as required to support an IIED claim. The court agrees.

IIED under North Carolina law has three elements: 1) extreme and outrageous conduct by the defendant; 2) which is intended to cause and does cause; 3) severe emotional distress to another. Turner v. Thomas, 369 N.C. 419, 427 (2016). Whether conduct satisfies the first element is a question of law. Johnson v. Bollinger, 86 N.C. App. 1, 6 (1987). The standard for such conduct is high. E.g., Moody-Williams v. LipoScience, 953 F. Supp. 2d 677, 682–83 (E.D.N.C. 2013).

Plaintiff alleges, as noted, that L.C. was forced to sit in a hallway for much of his third grade year, that defendants lodged a false child protective services report, and that L.C. was wrongfully disciplined for two different incidents. (See Compl. ¶¶ 14, 16–22).

This conduct is not extreme or outrageous to the requisite degree. Similar allegations have been held insufficient. See, e.g., Keziah v. W.M. Brown & Son, Inc., 888 F.2d 322, 326–27 (4th Cir. 1989) (holding allegations of sex-based discrimination, and that plaintiff was "harassed [and] humiliated" were insufficient); Dobson v. Harris, 134 N.C. App. 573, 578–79 (1999) (submitting false child protective services report did not suffice), rev'd on other grounds, 352 N.C. 77 (2000); Hogan v. Forsyth Cnty. Country Club Co., 79 N.C. App. 483, 493–94 (1986) (supervisor "scream[ing]" at plaintiff, "interfere[ing]" with her responsibilities, and "thr[owing] menus at her" did not suffice); Briggs v. Rosenthal, 73 N.C. App. 672, 677–78 (1985) (holding that unflattering article about son killed in car crash did not suffice for IIED claim brought by grieving parents).

Nor do assertions of racially based misconduct automatically suffice. See, e.g., Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 635 (M.D.N.C. 2000) (holding such allegations

9

"deplorable" but insufficient); Frazier v. First Union Nat'l Bank, 747 F. Supp. 1540, 1554 (W.D.N.C. 1990).

In contrast, for example, sufficient allegations include that police officers maliciously framed a plaintiff for first-degree murder, Turner, 369 N.C. at 428, and that a university publicly suggested a rape victim was to blame for the rape and underhandedly tricked the victim into withdrawing from school. Rouse v. Duke University, 869 F. Supp. 2d 674, 681–82 (M.D.N.C. 2012).

Plaintiff's claims are akin to the first group of cases cited above, not the latter. The discipline of which plaintiff complains may have been unfair, but it does not rise to the level of actionably extreme and outrageous conduct.

Plaintiff offers two responses to defendants' arguments. Neither prevails.

First, plaintiff argues that defendants' bungling of any investigation into alleged bullying of L.C. constituted extreme and outrageous conduct. (See Pl's Br. 12–13). The court disagrees. As defendants persuasively argue, failure to investigate or correct the misconduct of others, or failure to properly administer policies, does not suffice. See Doe v. Univ. of N.C. Sys., No. 1:23-cv-41, 2024 WL 925549, at *14 (W.D.N.C. Mar. 4, 2024) (holding flawed Title IX investigation which led to student's expulsion did not constitute extreme conduct, and collecting similar cases); Cash v. Lees-McRae Coll., Inc., No. 1:18-cv-52, 2018 WL 7297876, at *14 (W.D.N.C. Aug. 13, 2018) (failure to enforce policies). Plaintiff's additional submissions again would not alter the analysis, because they would add no new substance to this claim.

Second, plaintiff attempts to pivot to a negligent infliction of emotional distress claim. (See Pl's Br. 13). Such claim is conceivably pleaded, given that the complaint lodges a claim simply for "infliction of emotional distress." (Compl. 7).

10

The elements of this claim are 1) the defendant negligently engaged in conduct; 2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress; and 3) the conduct in fact caused such distress. See Johnson v. Ruark Obstetrics & Gynecology Associates, P.A., 327 N.C. 283, 304 (1990).

Plaintiff fails to plead at least the first element here. As noted above, plaintiff fails to draw any link between defendants and any of the alleged bullying which L.C. suffered, or between defendants and any staff members who may have intervened. Such claims are in marked contrast to the cases upon which plaintiff relies. In one, defendant doctors negligently failed to care for plaintiff during pregnancy, resulting in the stillbirth of her child. See Johnson, 327 N.C. at 286–87. In the other, defendant doctors negligently failed to inform plaintiff of the results of important blood tests, resulting in the transmission of a serious genetic condition to the plaintiff's child. See McAllister v. Ha, 347 N.C. 638, 640 (1998).

Yet again, plaintiff's improperly submitted additional allegations would not salvage this claim. They do not reveal that any employee of defendants had any role in any bullying, or that any might have intervened. Interviews with teachers in these documents reflect their perception that L.C. was not bullied, and that in fact other students merely defended themselves from him, but plaintiff does not allege that such perception was negligently formed or held. (See Suppl. Docs. 14–15). Indeed, Dunbar's affidavit affirmatively states that the cause of L.C.'s distress was the death of his father during his enrollment. (See id. 1). Plaintiff's attempt to pivot plaintiff's claim to a negligent infliction basis fails.

## CONCLUSION

For the forgoing reasons, defendants' motion to dismiss (DE 12) is GRANTED. Plaintiff's claims are dismissed for failure to state a claim under Rule 12(b)(6). The clerk is DIRECTED to close this case.

SO ORDERED, this the 19th day of July, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge